IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PASADENA REFINING SYSTEM, INC., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CASE NO._____ |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## PETITION TO QUASH SUMMONS

Pasadena Refining System, Inc. ("PRSI") seeks to quash a summons issued by the Internal Revenue Service ("IRS") to Gary W. Rohmer ("Rohmer") of PricewaterhouseCoopers ("PwC") to the extent the summons seeks information protected by applicable privileges or exemptions from discovery. The IRS has issued the summons in connection with an examination of PRSI's 2005, 2006, and 2007 federal income tax returns. A true and correct copy of this summons is attached hereto as Exhibit A.

### I. Parties

PRSI is a Connecticut corporation whose headquarters are located in Pasadena, Texas, at 111 Red Bluff Road, Pasadena, TX 77506. Its Employer Identification Number is XX-XXX3158. Respondent is the United States of America. Pursuant to 26 U.S.C. § 7609(b)(2)(B), notice of this Petition is being provided by certified mail, return receipt requested, to Rohmer and to the IRS officer identified in the summons attached hereto as Exhibit A and to the United States pursuant to FED. R. CIV. P. 4(i).

## II. Jurisdiction, Standing, and Venue

This Court has subject-matter jurisdiction over this proceeding pursuant to 26 U.S.C. §7609(h)(1). The documents in question relate to PRSI. PRSI is a person who is identified in the summons and is entitled to notice thereof.[1] Accordingly, PRSI has standing to bring this proceeding, and this Court has jurisdiction over this proceeding.[2] This proceeding is brought within twenty (20) days after the IRS mailed notice of the summons to PRSI.[3] Because the person to be summoned, Rohmer, is found in the Northern District of Texas, venue is proper in this District.[4]

## III. Grounds for Relief

PRSI files this petition to quash because the IRS has summoned documents from Rohmer of PwC that are protected by applicable privileges and exemptions from discovery.

Before seeking documents from Rohmer and PwC, the IRS sought the same documents from PRSI itself. As explained below, however, PRSI does not have possession of the documents held by Rohmer and PwC and could not comply with the IRS's request. Accordingly, the IRS issued a summons to Rohmer, requesting nineteen categories of documents that must be produced (the "PwC Documents"). These documents are currently in PwC's possession, rather than PRSI's, and have been for some time. PRSI does not have possession of the PwC Documents because a former owner of PRSI, Astra Oil Trading NV ("AOT NV"), instructed PwC not to disclose any documents to PRSI, and PwC has complied with that instruction.

---

[1] 26 U.S.C. § 7609(a)(1).

[2] *Id.* at § 7609(b)(2) and (h)(1).

[3] *Id.* at § 7609(b)(2).

[4] *Id.* at § 7609(h)(1).

AOT NV's instruction, and PwC's compliance with it, forced PRSI to sue AOT NV to force it to consent to the production of the PwC Documents and to compel the production of other documents within AOT NV's possession, custody, or control. When AOT NV continued to deny PRSI access to the PwC Documents after suit was filed, PRSI issued a subpoena to PwC that led to the production of some documents on April 6, 2010. PRSI has reviewed those documents and determined which ones are privileged, as set forth on the privilege log attached hereto as Exhibit E.

Because PwC has not completed its production of documents in response to PRSI's subpoena, PRSI has been unable to complete its privilege review and determine which PwC Documents are protected by the work-product, attorney-client, or tax-practitioner privilege. To the extent the documents not yet reviewed are protected by any of these privileges, and to the extent the documents on Exhibit E are covered by these privileges, PRSI seeks to quash the summons.

## IV.  Factual Background

In February 2005, Crown Central Petroleum Corporation sold its Pasadena, Texas, refining facility to Pasadena Refining Systems, Inc. ("Old PRSI"), an indirect wholly-owned subsidiary of Astra Holding USA, Inc. ("Astra Holding"), which was wholly-owned by AOT NV.

In August 2006, Astra Holding engaged in a restructuring, distributing two of its subsidiaries to AOT NV; merging Old PRSI and its direct parent into Astra Holding; and having Astra Holding change its name to Pasadena Refining System, Inc., the petitioner in this proceeding.[5]

---

[5] *See* Exhibit C (organizational charts) at page 2.

**PETITION TO QUASH SUMMONS– Page 3**

On September 1, 2006, AOT NV sold Petrobras America Inc. ("PAI") a 50% interest in PRSI. PAI and AOT NV also formed PRSI Trading Company L.P. ("PRSI Trading"), with each party indirectly owning 50% of PRSI Trading through certain affiliates.[6]

As of September 17, 2008, ownership, management and control of PRSI and PRSI Trading transferred to PAI and its affiliates pursuant to rulings issued by arbitrators empanelled by the International Centre for Dispute Resolution. AOT NV delivered its stock in PRSI and its affiliates' partnership interests in PRSI Trading to PAI and its affiliates on April 27, 2009. PAI and its affiliates unquestionably own 100% of PRSI and PRSI Trading.

Since late April 2009, PRSI and PRSI Trading have repeatedly demanded that AOT NV and its counsel deliver to PRSI and PRSI Trading all PRSI and PRSI Trading books and records within their possession, custody, or control. Because they consistently refused to do so, PRSI and PRSI Trading filed a lawsuit on June 2, 2009, (the "Turnover Suit") in Texas state court, requesting that AOT NV, K&L Gates LLP ("K&L Gates"), and Akin, Gump, Strauss, Hauer & Feld LLP ("Akin Gump") produce all of PRSI's and PRSI Trading's documents, books, and records within their possession, custody, or control. *See* Complaint Filed in Turnover Suit attached hereto as Exhibit D. Since the filing of the Turnover Suit, AOT NV, K&L Gates, and Akin Gump have provided PRSI and PRSI Trading with some documents. But PRSI believes that AOT NV, K&L Gates, and Akin Gump have additional documents that should be produced. The Turnover Suit remains pending at this time, and AOT NV and PAI are also involved in other suits relating to the arbitral award and the unwinding of their former joint venture.

More relevant to this petition, the Turnover Suit also seeks AOT NV's consent to the release of all PRSI and PRSI Trading documents, books, and records within PwC's possession, custody, or control. Both before and after filing the Turnover Suit, PRSI and PRSI Trading

---

[6] *See id.* at page 3.

**PETITION TO QUASH SUMMONS– Page 4**

made written demands on PwC for copies of all tax returns for PRSI (or any of its predecessors, including Astra Holding) and PRSI Trading, as well as copies of all workpapers and documentation related to those tax returns. PwC refused to produce documents in response to those demands. That forced PRSI to issue a subpoena to PwC on February 16, 2010, for the production of those tax returns, workpapers, and other documentation. *See* Subpoena Duces Tecum attached hereto as <u>Exhibit E</u>.

After the subpoena was issued, PRSI and PwC agreed that PwC would have until April 20, 2010, to produce documents or otherwise object or respond to the subpoena. *See* Agreements attached hereto as <u>Exhibit F</u>. Under Internal Revenue Code Section 7609(b)(2), however, PRSI must file a petition to quash the IRS's summons by April 19, 2010, because that date is 20 days from the date the IRS mailed the summons. Although PRSI asked the IRS to withdraw the summons or extend PwC's response date, so that the deadline for filing this petition to quash would be after PwC produced documents to PRSI, the IRS refused to do so.

PRSI is filing this petition to quash by the current April 19th deadline to preemptively protect all privileges applicable to the PwC Documents. After PwC produces documents to PRSI on April 20th, PRSI will review those documents for applicable privileges, update its privilege log, and produce all non-privileged documents to the IRS. PRSI has advised the IRS that it wants to cooperate and produce all non-privileged documents needed to conduct the audit, and that this petition is being filed only to protect those privileges applicable to the PwC Documents.

### V. Arguments and Authorities

Under Internal Revenue Code Section 7609(b)(2), PRSI has the right to initiate a proceeding to quash a third-party summons. PRSI can prevent enforcement of a third-party

summons by successfully challenging it on "any appropriate ground."[7]   The United States Supreme Court, Fifth Circuit, and district courts of the Fifth Circuit all have held that legal privileges prevent enforcement of an IRS summons.[8]   In short, there is no doubt that the existence of a legal privilege trumps the IRS's summoning authority.  Thus, the existence of a legal privilege will prevent enforcement of the summons as to any privileged documents.

Here, PRSI has reviewed the documents produced on April 6th by PwC and determined that several of them are privileged, which prevents their production in response to the IRS's summons.  *See* Privilege Log attached hereto as <u>Exhibit B</u>.  In addition, PRSI expects that additional documents to be produced by PwC on April 20th will also be protected by applicable privileges, although PRSI has not been able to review those documents yet.

A similar situation arose in *Valero Energy Corp. v. U.S.*, in the Western District of Texas.[9]   In that case, the taxpayer filed an initial petition to quash, arguing that the requested documents (which were outside of the taxpayer's possession) did not exist, or alternatively might be privileged.[10]   When ruling on the enforceability of the summons, the *Valero* court concluded that the taxpayer could "submit declarations in support of its contention that some documents are

---

[7] *U.S. v. Powell*, 379 U.S. 48, 57 (1964).

[8] *U.S. v. Euge*, 444 U.S. 707, 711 (1980) (holding that the IRS's authority to summon under I.R.C. § 7602 is "subject to the traditional privileges"); *Reisman v. Caplin*, 375 U.S. 440, 449 ( 1964) (holding that a third party summons may be challenged on the ground that the summoned documents are protected by the attorney-client privilege and noting that the lower court had issued a temporary restraining order to prevent the third party's compliance with the summons); *see also U.S. v. Mercurio*, 418 F.2d 1213, 1215 (5th Cir. 1969) (noting that a taxpayer would be allowed to intervene in an action by the IRS to enforce a third party summons in order to prevent disclosure of privileged documents), superseded on other grounds, *aff'd by Donaldson v. U.S.*, 400 U.S. 517 (1971), superseded on other grounds; *Lobue v. U.S.*, 98 A.F.T.R. 2d 2006-5323 (S.D.Tex. 2004) (noting that the IRS's summons authority is "subject to the traditional privileges").

[9] 2010 U.S. Dist. LEXIS 34268 (W.D. Tex. April 7, 2010).

[10] The relevant facts of *Valero* are clear from Valero's Petition to Quash Summons and Memorandum of Authorities at 3.

subject to the tax-practitioner privilege."[11] Thus, *Valero* teaches that when the documents sought by the IRS are not available to the taxpayer, and there is a preemptive privilege claim made, the taxpayer should be allowed to review the documents and submit declarations supporting any applicable privileges.

This Court should follow *Valero* and give PRSI time to review the PwC Documents and to present evidence supporting any applicable privileges. To do otherwise will permanently deprive PRSI of privileges that it would otherwise possess.

A.      *PwC's Disclosure Will Permanently Deprive PRSI of the Attorney-Client Privileges Applicable to the PwC Documents*

PwC is a professional accounting firm that worked closely with PRSI's lawyers at K&L Gates to render legal advice to PRSI during the years under examination by the IRS. PRSI therefore expects PwC to possess documents provided by K&L Gates in connection with the rendition of legal advice to PRSI. To the extent that PwC exchanged documents or information with PRSI or its lawyers in furtherance of the rendition of legal advice to PRSI, PwC is bound by the attorney-client privilege as to the information or documents exchanged.[12] Thus, to the extent that PwC has any documents covered by the attorney-client privilege, PwC is bound by that privilege.[13]

An overwhelming majority of courts, including the Northern District of Texas, hold that the attorney-client privilege is permanently waived when a taxpayer produces privileged

---

[11] 2010 U.S. Dist. LEXIS 34268 at *27. The central debate in this opinion revolves around whether collateral estoppel precluded the taxpayer from asserting its claim that the IRS summons was overbroad, but the court also ruled that the taxpayer could, in the future, submit declarations in support of the privilege.

[12] *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (holding that the attorney-client privilege extends to accountants who provide assistance to either a client or attorney in connection with the provision of legal services to the client); *accord U.S. v. Davis*, 636 F.2d 1028, 1043 n.17 (5th Cir. 1981) (citing *Kovel* favorably for the proposition that "[a]ccounting services performed ancillary to legal advice may be within the attorney-client privilege").

[13] Alternatively, the tax practitioner privilege discussed below may apply to those documents.

documents in response to a governmental agency's request for documents and that such a waiver applies broadly to the subject matter of the documents.[14]  Although waiver of the attorney-client privilege as a result of disclosures to a governmental agency arises most often for disclosures made to the SEC, disclosures to the IRS can similarly waive privileges.[15]  In short, there is an overwhelming consensus, joined by the Northern District of Texas, holding that the attorney-client privilege is waived by disclosure to a governmental agency.  Thus, if PwC produces any attorney-client privileged documents to the IRS, PRSI's privilege will be permanently waived.

It is axiomatic that the attorney-client privilege belongs to the client.[16]  Accordingly, PRSI has the right to assert the attorney-client privilege here.  By filing this petition, PRSI asserts that right to the extent it applies to any PwC documents.  Allowing PwC to disclose attorney-client privilege documents in the face of PRSI's privilege claims would be improper.

B.    *PwC's Disclosure Will Permanently Deprive PRSI of the Tax Practitioner Privilege Applicable to the PwC Documents*

---

[14] *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) (finding persuasive the overwhelming authority rejecting the "selective waiver doctrine," which only the Eighth Circuit has held allows disclosure of privileged documents to certain governmental agencies without causing complete waiver of the attorney-client privilege) (citing *In re Qwest Communs. Int'l*, 450 F.3d 1179, 1201 (10th Cir. 2006) (holding that the attorney-client privilege is waived when disclosure is made to the Securities and Exchange Commission ("SEC")); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002) (same); *Westinghouse Elec. Corp. v. Republic of Phillipines*, 951 F. 2d 1414, 1424-25 (3rd Cir. 1991) (same as to attorney-client and work-product privilege); *In re Martin Marietta Corp.*, 856 F.2d 619, 623-24 (4th Cir. 1988) (refusing to apply a limited-waiver doctrine as to either the attorney-client privilege or non-opinion work-product privilege in the context of disclosures made to the Department of Defense); *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982) (holding that clients cannot "pick and choose" the times when the attorney-client privilege is in effect); *Permian Corp. v. U.S.*, 214 U.S. App. D.C. 396, 665 F.2d 1214, 1220-21 (D.C. Cir. 1981) (holding the attorney-client privilege was waived by disclosure to the SEC));*S.E.C. v. Chesnoff*, 2006 WL 2052371, *3 (N.D. Tex, July 18, 2006) ("Additionally, any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications resulting to the same subject matter.").

[15] *See, e.g.*, *United States v. The El Paso Company*, 682 F.2d 530 (analyzing whether the attorney-client and work-product privileges prevent enforcement of an IRS summons); *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (finding a waiver of the attorney-client privilege when the taxpayer disclosed certain statements to the IRS, even though the taxpayer may have had an agreement with the IRS that "restricted" the nature of the disclosure).

[16] *In re Grand Jury Proceedings*, 43 F.3d 966 (5th Cir. 1994) ("[T]he attorney-client privilege is, of course, held by the client and not the attorney.").

PwC is a professional accounting firm that provides tax advice to PRSI under Internal Revenue Code Section 7525(a)(3)(B). As a PwC client, PRSI sought and received tax advice from federally authorized tax practitioners at PwC during the time period currently under audit by the IRS. Thus, PRSI expects the tax practitioner privilege to apply to some of the PwC documents.

Created by Internal Revenue Code Section 7525, the tax practitioner privilege mirrors the attorney-client privilege can also be waived by disclosure to a third party.[17] Thus, the same principles discussed above in relation to the attorney-client privilege also apply here. Like the attorney-client privilege, the tax practitioner privilege belongs to the client. Accordingly, the privilege is PRSI's to assert, and PRSI is asserting the privilege as to the PwC Documents by filing this petition to quash. Allowing PwC to disclose tax practitioner privileged documents in the face of PRSI's privilege claims would be improper.

C.   *PwC's Disclosure Will Permanently Deprive PRSI of the Work-Product Privilege Applicable to the PwC Documents*

As explained above, PwC worked closely with K&L Gates to provide legal and tax advice to PRSI. K&L Gates and PwC exchanged information and documents while rendering legal advice to PRSI. PRSI believes that some of the information and documents exchanged with PwC were prepared in anticipation of litigation with the IRS. Accordingly, the work-product privilege would apply and protect that information and those documents from disclosure.

In *Upjohn Co. v. U.S.*, the Supreme Court confirmed that the work-product privilege may be invoked in response to an IRS summons:

---

[17] *See* I.R.C. §7525(a) ("[T]he same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney."); *see Doe v. KPMG, LLP*, 325 F. Supp. 2d 746, 752 (N.D. Tex. 2004) (holding that a court must "look to the law of attorney-client privilege to inform its interpretation of the taxpayer-federally authorized tax practitioner privilege").

> [T]he obligation imposed by a tax summons remains "subject to the traditional privileges and limitations." ... Nothing in the language of the IRS summons provisions or their legislative history suggests an intent on the part of Congress to preclude application of the work-product doctrine. Rule 26(b)(3) codifies the work-product doctrine, and the Federal Rules of Civil Procedure are made applicable to summons enforcement proceedings by Rule 81(a) (3).[18]

Since *Upjohn*, numerous courts have held that disclosure of work-product privileged documents to a governmental agency waives the privilege.[19] Thus, like the attorney-client and tax practitioner privilege, the work-product privilege is waived by disclosure to a third party.

The work-product privilege belongs to both the client and the attorney, "either one of whom may assert it."[20] Here, PRSI is PwC's client and is asserting the work-product privilege as to the PwC Documents.

D.     *PRSI is Asserting Privileges as to Documents Already Received from PwC*

As explained above, most of the documents requested in the IRS summons are outside of PRSI's possession, custody, and control.  However, PwC produced some documents to PRSI on April 6th that are also responsive to the summons.  PRSI has reviewed those documents and determined that certain privileges apply to them, as set forth in the privilege log attached hereto as <u>Exhibit B</u>.  PRSI intends to supplement its privilege log as PwC produces additional documents to PRSI.

---

[18] 449 U.S.383, 398–99 (1981) (internal citation omitted).

[19] *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (finding waiver of the work product doctrine where the taxpayer voluntarily submitted a memorandum to the SEC);  *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997) (holding that the work-product privilege was forfeited when the taxpayer provided the privileged documents to the Defense Contract Audit Agency, the auditing arm of the Department of Defense);  *Westinghouse Elec.*, 951 F. 2d at 1424-25 (holding work-product privilege is waived as a result of disclosure to the SEC);  *In re Martin Marietta*, 856 F.2d at 623-24 (refusing to apply a limited-waiver doctrine as to non-opinion work product in the context of disclosures made to the Department of Defense).

[20] *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir.1994).

## VI. Conclusion

PRSI has filed this petition to quash to protect all privileges applicable to the PwC Document sought in the IRS's summons. PRSI tried to negotiate an agreement with the IRS that could have eliminated the need for this petition, but the IRS refused to withdraw its summons or to extend the deadline for the production of documents. PRSI has told the IRS that it intends to cooperate and produce non-privileged documents, but that it must file this petition to quash to protect all privileges applicable to the PwC Documents. PRSI cannot risk a possible waiver of its privileges through the production of documents in response to the IRS's summons.

FOR ALL THESE REASONS, PRSI requests that, after notice to the United States and Rohmer, this Court:

1. Quash the summons to the extent it seeks the production of privileged documents;

2. Allow PRSI to present evidence supporting its privilege claims;

3. If necessary, conduct an evidentiary hearing on PRSI's privilege claims;

4. Award costs of court; and

5. Grant such other relief to which PRSI may be entitled.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: _____

     William M. Katz, Jr.
     State Bar No. 00791003

     Lawrence Andrew Melsheimer
     State Bar No. 24037090

     Brian W. Stoltz
     State Bar. No. 24060668

Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas   75201
Telephone:  214-969-1330
Facsimile:  214-969-1751

**ATTORNEY-IN-CHARGE FOR
PETITIONERS**

## CERTIFICATE OF SERVICE

This Petition to Quash Summons was served in compliance with 26 U.S.C. § 7609(b)(2)(B) and FED. R. CIV. P. 4(i) by Certified Mail, Return Receipt Requested, on the following persons on April 19, 2010:

Gregory Hayes
Internal Revenue Service
Mail Stop 4304-HAL: Hayes
8701 S. Gessner
Houston, TX 77074

James I. Gibb
Internal Revenue Service
4050 Alpha Road
Farmers Branch, TX 75244

Civil Process Clerk
United States Attorney
United States Attorney's Office
Northern District of Texas
1100 Commerce Street
Room 1452
Dallas, TX 75242

United States Attorney General
Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530-0001

Gary W. Rohmer
PricewaterhouseCoopers
2001 Ross Avenue, Suite 1800
Dallas, TX 75201

_____

William M. Katz, Jr.