IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PASADENA REFINING SYSTEM INC., | § | |
|     Petitioner, | § | |
| | § | Civil Action No. 3:10-CV-0785-K (BF) |
| v. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred Petitioner Pasadena Refining System Inc.'s ("PRSI") Motion to Quash Summons (doc. 1) to the United States Magistrate Judge for report and recommendation. (Ord. June 25, 2010.) Petitioner filed its Motion on April 19, 2010, seeking to quash a summons issued by the Internal Revenue Service ("IRS') to Gary W. Rohmer of PricewaterhouseCoopers ("PwC") to the extent the summons seeks information protected by applicable privileges. The IRS has issued the summons in connection with an examination of PRSI's 2005, 2006, and 2007 federal income tax returns. Respondent filed its Response to the Motion on June 18, 2010. Pursuant to the Court's order, PRSI filed an updated privilege log on November 8, 2010, asserting the attorney-client privilege and/or tax practitioner privilege as to ten documents. Respondent requested an *in camera* review of all the documents. The Court held an evidentiary hearing on April 18, 2011. After consideration of PRSI's Brief in Support of Privilege Claims, Respondent's Brief in Opposition, and all evidence presented at the hearing, the Court finds the following:

**Analyis**

To invoke the attorney-client privilege, the claimant must establish: (1) a confidential communication; (2) made to a lawyer or his subordinate; (2) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. *See United States v.*

*Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). The attorney-client privilege protects both communications made by a client to his lawyer for the purposed of obtaining legal advice and those made by the attorney to the client in the course of giving legal advice. *United States v. Mobil Corp.*, 149 F.R.D. 533, 535 (N.D. Tex. 1993) (citing *In re LTV Securities Litigation*, 89 F.R.D. 595, 600-03 (N.D. Tex. 1981).

Because the privilege protects only confidential communications, communications made in the presence of or disclosed to a third party are not privileged. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). Therefore, it is important to distinguish those who are considered third parties and those who are not.

The privilege covers communications not only with lawyers but also with representatives of lawyers or persons whom lawyers employ to assist in providing legal services. *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) (citing *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961)); *see also* Restatement Third, Law Governing Lawyers § 70. The privilege may also reach outside experts employed to help the lawyer provide legal services, such as an accountant. *Kovel*, 296 F.2d at 922 (presence of accountant "is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit"). Similarly, a client may also act through a representative in communicating with her attorney. *See Nguyen v. Exel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999); *Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122, *129 (Fed. Cl. 2007). When the client appoints a representative to obtain or act on legal advice, or to talk to the lawyer, the privilege covers what the intermediaries say to the lawyer and what the lawyer says to them. *See Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1191 (4th Cir. 1991). However, the privilege extends to the representative only for

communications intended to help the lawyer provide legal services to the client. *See id.*

When a client is a corporation, communications made by employees remain privileged so long as the communications fall within the scope of their corporate duties. *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981). Furthermore, corporations related through common ownership or control are treated as one entity for attorney-client privilege purposes. *See Mobil Corp.*, 149 F.R.D. at 537-38; *Music Sales Corp. and Tempo Music Corp. v. Morris*, No. 98CIV.9002, 1999 WL 974025, *7 (S.D.N.Y. Oct. 26, 1999) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1184 (D.S.C. 1975)). Even unrelated corporations may claim the attorney-client privilege for communications they have shared with each other if they have a substantial identity of legal interest. *Music Sales Corp.*, 1999 WL 974025, at *7 (citing *Duplan*, 397 F.Supp. at 1172).

> The tax-practitioner privilege is a statutorily created privilege that states:
> With respect to tax advice, the same common-law protections of confidentiality applicable to communications between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

26 U.S.C. § 7525(a)(1). A "federally authorized tax practitioner" is "any individual who is authorized under Federal law to practice before the Internal Revenue Service if such practice is subject to regulations under section 330 of title 31, United States Code." 26 U.S.C. § 7525(a)(3)(A). Such individuals include attorneys and CPAs. 31 U.S.C. § 331; 31 C.F.R. § 10.3. As the statutory language indicates, the law of attorney-client privilege informs the understanding and effect of the statutory tax-practitioner privilege. *Doe v. KPMG, LLP*, 325 F. Supp. 2d 746, 752 (N.D. Tex. 2004). For example, like the attorney-client privilege, the privilege does not include communications regarding the preparation of tax returns. *See Evergreen Trading*, 80 Fed. Cl. at *134; *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1043 (1981)).

PRSI was formerly known as Astra Holding USA, Inc. ("Astra Holding"). While still known as Astra Holding, PRSI owned 100% of three other entities: Astra Oil Company, Inc., Astra Power LLC, and Astra Refining Systems, Inc. PRSI also indirectly owned, through Astra Refining, 100% of Pasadena Refinding Systems, Inc. ("Old PRSI"). Astra Holding was a wholly owned subsidiary of Astra Oil Trading NV ("AOT NV"). Through a restructuring in 2006, Astra Oil merged into a newly formed entity, Astra Oil Company LLC, and its ownership interests as well as the ownership interest of Astra Power were distributed to AOT NV. Old PRSI was merged into Astra Holding, which then became PRSI.

In connection with the restructuring, AOT NV sold 50% of its interest in PRSI to Petrobras America Inc, an unaffiliated corporation. Sometime later, in arbitration, AOT NV divested itself of all its ownership interest in PRSI by transferring its remaining interest to Petrobas America.

K&L Gates and PwC performed legal and tax work for Astra Holding and other Astra entities before and after the restructuring. PRSI, as the successor to Astra Holding, is the holder of the privileges asserted today. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."). The Respondent argues that because K&L Gates and PwC ceased representation of PRSI after ownership was transferred to Petrobas America, any communications that took place after the restructuring cannot be privileged. Respondent is mistaken. As Petitioner correctly point out, the communications at issue all relate to the tax years surrounding the reorganization, a time during which K&L Gates and PwC represented PRSI and other Astra entities. These communications remain under the scope of the attorney-client and tax-practitioner privileges. *See In re Flonase Antitrust Litigation*, 723 F. Supp. 2d 761, 764-65

4

(E.D. Pa. 2010).

The Court now turns to each of the documents at issue.

**Documents with No Recipient**

Documents 1, 5, and 9 are all documents created within PwC. However, Petitioner has failed to specify a recipient for these three documents. Therefore, Petitioner has failed to prove that these documents are communications. The tax-practitioner privilege protects only communications and not work product. *See Evergreen Trading*, 80 Fed. Cl. at *134. Therefore, these documents are not protected by any privilege.

**Communications Within PwC**

Both Documents 2 and 4 are emails sent between various CPAs at PwC. After reviewing the emails, the Court finds that they concern a discussion of legal tax strategy consequences regarding the Section 199 deduction for Old PRSI, Astra Oil, and Astra Power as well as Advanced Pricing Agreement ("APA") calculations for 2006. They also concern an interpretation of a partnership agreement. These communications were kept confidential at all times and are therefore protected by the tax-practitioner privilege.

Document 7 contains draft exhibits regarding the valuation of Astra Oil and Astra Power as of August 31, 2006. After examining the document, the Court finds that the draft valuation was prepared primarily for the purpose of rendering tax advice. Further, the information was exchanged only between PRSI's hired accountants and their representatives and remained confidential at all times. This document is protected by the tax-practitioner privilege.

**Communications between PwC and K&L Gates**

Document 3 is an email exchanged between representatives of PwC, K&L Gates, and PRSI.

5

The email concerns analysis of mark-to-market accounting issues for 2005 as well as APA discussions. Here, PwC, acting as an agent of PRSI, communicated with PRSI's attorney for the purpose of rendering legal advice. These communications remained confidential and are subject to both the attorney-client and tax-practitioner privileges. *See Evergreen Trading*, 80 Fed. Cl. at *141 (distinguishing between situations where the accountant is acting as an attorney's agent and those where the accountant is acting as the client's agent and finding the latter covered by the attorney-client privilege).

Document 6 is a draft presentation regarding a valuation study for Astra Oil and Astra Power in 2006 as well as memoranda concerning Old PRSI valuations. The document was exchanged between representatives of PwC, K&L Gates, and PRSI. After examination of the documents, the Court finds that the communication was made primarily for the purpose of securing tax advice concerning the effects of the 2006 restructuring. These communications remained confidential and are subject to the attorney-client and tax-practitioner privileges for the same reasons as Document 3.

Document 8 is an email chain exchanged between representatives of PwC, K&L Gates, and PRSI. The emails concern tax issues surrounding the restructuring and were made for the purpose of rendering tax advice. The communications remained confidential and are subject to the attorney-client and tax-practitioner privileges for the same reasons as Documents 3 and 6.

Document 10 is an email chain exchanged between representatives of PwC and K&L Gates. The document concerns an APA adjustment analysis for 2006. The Court finds that the communications were made for the purpose of rendering tax advice and remained confidential. Document 10 is protected by the attorney-client and tax-practitioner privileges for the same reasons

as Documents 3, 6, and 8.

## **Recommendation**

The Court recommends that the Petition be GRANTED insofar as it relates to Documents 2, 3, 4, 6, 7, 8, and 10 and DENIED insofar as it relates to Documents 1, 5, and 9.

SO RECOMMENDED, April 26, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE